## 21712. SIKES v. THE STATE.

DECIDED FEBRUARY 16, 1932.

*H. A. Allen,* for paintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, John H. Hudson,* contra.

LUKE, J. The indictment in this case charges Aubrey Sikes and others with murdering Dennis Hubert by shooting him with a pistol. Sikes was tried separately and found guilty of voluntary manslaughter. His motion for a new trial contains the usual general grounds and one special ground.

The State's evidence tends to show that the negro youth, Dennis Hubert, was killed in pursuance of a conspiracy.. There is no dispute that the defendant and others drove down to the playground where Hubert was, and that one of the party shot and killed him. James Raggins testified: "Mr. Martin asked Mr. Garvin: 'Which one is it?' And he says: 'This one here,' . . and Mr. Garvin began to beat him. Dennis says: 'What is the meaning of this; I never did anything.' Then Mr. Martin said: 'Let me have it;' and shot him. . . I told Mr. Allen three men come up to Hubert, and one I didn't know. Garvin struck him, and

Martin shot him, and Sikes was the third man. He was right there, . . they were all right there together." We quote next from a written statement made by the defendant on June 16, 1930: "Garvin came to Harmon's store about four-thirty p. m. and called the police to come and get a negro man who had insulted his wife, and that he had tried to rape her. The police told him that it would be about thirty minutes before they could get there." (It appears from said affidavit that Garvin then said that his wife and Mrs. Harmon and some girls were picking flowers in the woods "when several negro men and children came by, and one of them grabbed hold of Mrs. Garvin by the arm" and used highly insulting language to her, and made an improper proposal to her, and that "Mrs. Garvin jerked loose and run.") The affidavit then proceeds as follows: "After Garvin told us this (Martin, myself and another man were in the store) he went on home. Murray Harmon and Tom Berryman came in a little after that, and we told them. We got in Tom Berryman's car—Tom Berryman, Troy Martin, Murray Harmon, Roy Evans, a man by the name of 'Fat'—and went over to Garvin's home on Fortress Avenue. He wasn't at home. We started back and met him down the street. We stopped and asked him how it was; and then we told him to get in and we would go over and whip the damned negro. We drove to the playground, and Garvin saw the negro and pointed him out. We stopped about ten or twelve steps from the man and Garvin got out, and Martin, Roy Evans, and myself followed behind Martin. When Garvin got to the negro, he asked him: 'What made you want to do that awhile ago for?' The negro replied: 'I did it, and I'm the man that done it.' The negro struck Garvin and was getting the best of him when I went up and pulled the negro off of Garvin. The negro turned on me and began fighting me with a knife, when I shot him. After that we went back to Pryor and Ridge Avenue section. Everybody in the car had guns." Several State's witnesses testified substantially as did the witness Raggins. The defendant introduced no witness and made no statement.

The only two questions presented for determination in this case are succinctly stated in the brief of counsel for the plaintiff in error to be: (1) Is there any evidence in this record which authorizes a conviction of the offense of voluntary manslaughter? (2) Did the court err in failing to charge the law of circumstan-

tial evidence as contended in the one ground of the amendment to the motion for a new trial?

The State introduced the affidavit subscribed and sworn to by the defendant, after counsel for the movant had expressly stated that he had no objection to it.

We shall preface our conclusion as to the first question propounded by counsel by the following statement from *Wilson* v. *State*, 9 *Ga. App.* 297 (2) (70 S. E. 1125): "A jury is authorized to believe a part of the defendant's statement, though the whole statement is not credible to them; and the same thing is true as to the testimony of each and every witness who appears before the jury." In the case at bar all the evidence was "State's evidence." It is true that the numerous witnesses sworn by the State made out a case of murder. However, the same is not necessarily true of the case made by the sworn affidavit of the defendant, made the day after the homicide. Of course, if the State's evidence had made out only a case of murder, and the defendant had introduced evidence making only a case of complete justification, and there had been no middle ground, as in *Hunnicutt* v. *State*, 114 *Ga.* 448 (40 S. E. 243), and other cases cited by the plaintiff in error, there could have been no legal verdict of voluntary manslaughter. In our opinion a casual reading of the record in the case at bar suffices to show how widely its facts differentiate it from the line of cases indicated. We are well satisfied that the evidence in this case warrants the verdict.

To our minds the verdict is by no means dependent entirely upon circumstantial evidence. The gist of the only special ground is that the State's case depends upon proof of a conspiracy, and that proof of the conspiracy depends solely upon circumstantial evidence, and that, therefore, the court erred in failing to charge the law of circumstantial evidence even though there was no request that he do so. We hold that the contention is without merit.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*